UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
MARC EINSOHN,

        Plaintiff,

  - against -

THE NEW YORK CITY DEPARTMENT OF
EDUCATION and HOWARD KWAIT, *in his individual
and official capacity*,

        Defendants.
----------------------------------------------------------------------X

**MEMORANDUM & ORDER**
17-CV-1863 (RRM) (RML)

ROSLYNN R. MAUSKOPF, United States District Judge.

    Plaintiff Marc Einsohn brings this action pursuant to 42 U.S.C. § 1983, against his former supervisor, Howard Kwait, and the New York City Department of Education ("DOE"), alleging retaliation in violation of his right to free speech under the First Amendment to the United States Constitution, as well as Article 1, Section 8 of the New York State Constitution. (Am. Compl. (Doc. No. 8).) He also asserts a claim against DOE for negligent supervision and retention of Kwait. Before the Court is defendants' motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). For the reasons that follow, defendants' motion is granted.

## BACKGROUND[1]

    Einsohn has served as an educator for 29 years. (Am. Compl. at ¶ 11.) For the past eight years, he has occupied the role of Assistant Principal ("AP") at John Bowne High School ("Bowne") in Queens. (*Id*.)

    On December 15, 2015, Einsohn attended a Cabinet Meeting at Bowne, which was presided over by his immediate supervisor, Principal Howard Kwait. (*Id*. at ¶¶ 2, 14.) At the meeting, Kwait questioned Einsohn on the low passing percentages in a certain Native Language

---
[1] The following facts are drawn from the amended complaint and are assumed true for the purpose of this Order.

Arts Spanish ("NLAS") class. (*Id.* at ¶ 15.) Einsohn "explained the reasons" for the grades, but Kwait "continued to pressure" him, "saying there must be 'something wrong,' and intimating that the grades should be improperly adjusted, in contravention of New York State law." (*Id.* at ¶ 16.) Einsohn "spoke out" against the suggestion, "in support of the School's legal obligation, on behalf of the integrity of the entire student body and as a concerned Citizen." (*Id.* at ¶ 17.)

Einsohn alleges that Kwait proceeded to launch "a campaign of retaliatory harassment" to "punish him and to pressure him to leave the School." (*Id.* at ¶ 18.) On January 11, 2016, Kwait noted "in a *non sequitur*" that Einsohn has "more excuses than anyone" and that he "always has an excuse." (*Id.* at ¶ 19.) He threatened to write in Einsohn's mid-year evaluation that he was failing to meet expectations, and further threatened a disciplinary conference. (*Id.* at ¶ 20.) A few days later, on January 14, Kwait told him that he decided to give his third-year STEM Spanish class to another teacher, Ms. Henriquez, and that Einsohn would instead teach a first-year NLAS class. (*Id.* at ¶ 21.)

On January 27, Kwait warned Einsohn, "[I]t is to your advantage to obey all of my directives." (*Id.* at ¶ 22.) He handed him a listing of vacancies, directing him to search for other opportunities because he no longer shared Kwait's "vision." (*Id.* at ¶ 23.)

On February 4, Kwait instructed Einsohn to obtain coverage for his class and to leave the building for the day. (*Id.* at ¶ 24.) He was subsequently instructed to return to school by a district administrator, and when he did, Kwait personally delivered his mid-year evaluation report. (*Id.* at ¶ 25.) The evaluation included Kwait's handwritten notes, which Einsohn alleges falsely stated that Kwait had discussions with him on two dates and falsely attributed two comments to him. (*Id.* at ¶¶ 26, 27.) First, in the report, Kwait wrote: "you advised me in person in December that U R not qualified to + don't feel comfortable teaching native Spanish

2

spkrs." (*Id*.) Second, the report indicated that Einsohn said, "I'll just tell her to inflate the grades + then the problem is solved." (*Id.* at ¶ 28.) The report concluded that Einsohn was "not meeting expectations." (*Id*. at ¶ 25.) As a result of the poor report, Einsohn was "disqualified" from "'per session' (overtime) work, reducing his income." (*Id.* at ¶ 29.)

On April 3, 2017, Einsohn brought the instant action, pursuant to 42 U.S.C. § 1983, alleging that he was subjected to retaliation in violation of his right to free speech under the First Amendment, as well the New York State Constitution. He also asserts that DOE engaged in negligent retention and supervision, alleging that DOE knew Kwait "was predisposed to . . . injurious conduct" and subjected Einsohn to a hostile work environment. (*Id*. at ¶ 42.)

Two months later, on June 5, Einsohn received a letter directing him to appear at a disciplinary hearing. (*Id*. at ¶ 31.) The hearing focused on Kwait's allegation that Einsohn took excessive absences, though Einsohn states that trivial absences were cited, such as leaving the building nine minutes early. (*Id.*) Einsohn alleges that he followed all requisite procedures in obtaining administrative approvals for absences, and that the absences in dispute were "medically certified," including Lasik surgery, which Kwait mocked as "elective." (*Id*.)

On June 19, Einsohn was summoned to a second disciplinary conference. (*Id.* at ¶ 32.) According to Einsohn, Kwait called the meeting for "vague allegations of misconduct but failed to specify what misconduct he was referring to." (*Id.*)

On approximately June 20, 2017, Einsohn filed the amended complaint. In addition to maintaining his original claims, he includes an additional claim alleging that defendants retaliated against him for filing the instant lawsuit, in violation of his rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. (*Id.* at ¶¶ 33, 45.) Einsohn states that he suffers from emotional distress because of the retaliation and harassment.

3

(*Id*. at ¶ 34.) He requests "compensatory, emotional, psychological and punitive damages," as well as "injunctive relief," though the amended complaint is silent as to what type of injunctive relief Einsohn seeks. (*Id*. at 9.)

In their motion to dismiss, defendants argue that none of the speech at issue is protected under the First Amendment, and none of Einsohn's grievances constitute actionable retaliation. Defendants emphasize that Einsohn complains of his limited ability to pursue overtime work, yet he does not allege that he ever applied for such work. (Defs.' Mem. (Doc. No. 19-1) at 10.) Additionally, they argue that he has failed to allege a basis for municipal liability, and that Kwait is protected by qualified immunity. (*Id.* at 12–13.) Finally, defendants contend that Einsohn's state law claims fail because he did not comply with New York's procedural prerequisites, and moreover, he has no viable substantive claims. (*Id*. at 14–16.)

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court accepts all factual allegations in the complaint as true, "drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (internal quotation marks omitted) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). Detailed facts are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). The determination of whether "a complaint states a plausible claim for relief" is "a context-specific

task that requires" the court to "draw on its judicial experience and common sense." *Id*. at 679 (citation omitted).

On a Rule 12(b)(6) motion to dismiss, a court may consider facts alleged in the complaint, exhibits attached to it, and documents incorporated therein by reference. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam). A court may also properly review "documents that, although not incorporated by reference, are 'integral' to the complaint." *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (internal quotation marks omitted) (citations omitted). A document is "'integral' when the pleading "relies heavily upon its terms and effect." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). The Second Circuit has observed that, "[i]n most instances where this exception is recognized, the incorporated material is a . . . legal document containing obligations upon which" the complaint "stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)). If a court considers a document because it is integral, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)); *see also King v. N.Y.C. Emps. Ret. Sys.*, 212 F. Supp. 3d 371, 397 (E.D.N.Y. 2016).

## DISCUSSION

### I. Documents Submitted on the Motion

Defendants attach six documents to the declaration of counsel Christopher Coyne ("the Coyne Declaration"), submitted in connection with their motion to dismiss: 1) the draft mid-year evaluation; 2) the final mid-year evaluation; 3) a disciplinary letter; 4) a notice of claim, dated February 19, 2016; 5) a notice of § 50-h hearing, dated March 7, 2016; and 6) a notice of § 50-h hearing, dated April 12, 2016. (*See* Ex. 1–6 to Coyne Decl. (Doc. No. 19-2).) Einsohn asks the Court to exclude the exhibits, arguing that they are neither incorporated by reference nor integral to the amended complaint. (Pl.'s Mem. (Doc. No. 22) at 3.) He also broadly challenges the exhibits as unauthenticated and lacking a foundation. (*Id*. at 4.)

All of the documents, with the exception of the disciplinary letter, could fairly be deemed incorporated by reference or integral to the pleading, either because they are explicitly referred to and relied on by Einsohn, or because they are procedurally integral to his ability to bring certain claims. However, the Court declines to consider the documents on this motion for the reasons explained below.

Einsohn's objection is warranted with respect to the disciplinary letter. While the amended complaint discusses the disciplinary conference, it never mentions the letter, and Einsohn does not rely on it in the claims he raises. "[R]eference to documents that may constitute relevant evidence in a case is not enough to incorporate these documents, wholesale, into the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (finding that transcripts of a disciplinary hearing were not properly considered, even though the complaint paraphrased part of the hearing). It is the conference itself, not the letter, that constitutes the alleged harm.

6

By contrast, the draft and final versions of the mid-term evaluation are incorporated in the pleading. Einsohn's claim is largely based on a loss of income opportunity as a result of the evaluation. (Am. Compl. at ¶ 29.) The amended complaint repeatedly refers to and quotes from handwritten notes on the draft mid-term evaluation, (*see id*. at ¶¶ 24–29), and those notes were later incorporated into the final version.

With respect to the notice of claim, the amended complaint explicitly refers to it, (*id*. at ¶ 7), and Einsohn necessarily relied on it in drafting his complaint. The Second Circuit has held that a document is "fairly deemed incorporated" when it is "integral to [the plaintiff's] ability to pursue" his claim. *Sira*, 380 F.3d at 67 (citations omitted) (holding that a reversal order was "incorporated" because while it was not explicitly cited in the complaint, it was procedurally integral to the § 1983 challenge). Here, "[c]ompliance with the notice of claim provisions of General Municipal Law § 50-e is a condition precedent to suit," and it "must be pleaded in the complaint." *Nicholas v. New* York, 130 A.D. 2d 470, 471 (2d Dep't 1987); *see also* N.Y. Gen. Mun. L. ("GML") § 50-e. To sustain his state law claims, Einsohn carries the burden to plead satisfaction of the notice of claim requirement. *See Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793–94 (2d Cir. 1999) (failure to comply with 50-i pleading requirements necessitates a dismissal for failure to state a cause of action); *see also Naples v. Stefanelli*, 972 F. Supp. 2d 373, 390 (E.D.N.Y. 2013) (dismissing state-law claims for failure to allege that a notice of claim was filed prior to the commencement of the action).

While the two § 50-h hearing notices are not referenced, they, too, are procedurally integral to Einsohn's ability to pursue his state law claims, and thus, they are incorporated in the pleading. Pursuant to GML § 50-h, "[w]herever a notice of claim is filed against a city . . . or school district . . . [the] school district shall have the right to demand an examination of the

claimant relative to the occurrence and extent of injuries or damages for which [the] claim is made . . . ." GML § 50-h(1). When a demand for a § 50-h hearing has been served upon a claimant, "no action shall be commenced" until the claimant has complied with the demand. GML § 50-h(5). Whether a § 50-h hearing notice has been filed and whether Einsohn has complied with the requirements of that notice determine whether he has the ability to pursue his state law claims. Thus, these documents are also "fairly incorporated" into the pleading. *Sira*, 380 F.3d at 67.

However, because Einsohn challenges the authenticity of these documents, the Court will exclude them from its consideration. The Second Circuit has stated that, if "there is a dispute as to the relevance, authenticity, or accuracy of the documents relied upon, the district court may not dismiss the complaint with those materials in mind." *Nicosia*, 834 F.3d at 231 (citation omitted); *see also Licopoli v. Mineola Union Free Sch. Dist.*, No. 09-CV-3974 (DRH) (AKT), 2010 WL 4961667, at *3 (E.D.N.Y. Dec. 1, 2010) (where plaintiff disputed the "authenticity and accuracy" of a contract submitted by defendants, it was inappropriate for the Court to consider). Accordingly, the Court relies solely on the amended complaint to decide the instant motion.

## II. Section 1983 Claim

Section 1983 is "not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). To state a claim under Section 1983, a plaintiff must allege that (1) "the challenged conduct was attributable at least in part to a person who was acting under color of state law," and (2) "the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Agyeman v. Roosevelt Union Free Sch. Dist.*, 254 F. Supp. 3d 524, 532 (E.D.N.Y. 2017) (quoting

*Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999)); *see also Krzesaj v. N.Y.C. Dep't of Educ.*, No. 16-CV-2926 (ER), 2017 WL 1031278, at *7 (S.D.N.Y. Mar. 15, 2017).

Here, the parties do not dispute that defendants acted under color of state law. The question is whether Einsohn has adequately alleged that defendants deprived him of his constitutional rights by retaliating against him for his comments at the Bowne staff meeting and his filing of the instant action.

To assert a First Amendment retaliation claim under Section 1983, a plaintiff must show that (1) the speech at issue was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between the speech and the adverse employment action. *See Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018) (citing *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)). A public employee's speech is only protected if (1) he spoke as a citizen, not a public employee, and (2) the subject of the speech was a matter of public concern. *See Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (citing *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011)). Unless the plaintiff can satisfy both elements, he has no First Amendment cause of action "based on his employer's reaction to the speech." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (citations omitted). If he meets both threshold requirements, the court proceeds to the next step of the inquiry, often referred to as the *Pickering* analysis. *See Pickering v Bd. of Educ.*, 391 U.S. 563, 568 (1968). This inquires whether the state had an "adequate justification for treating the employee differently from any other member of the public based on the government's needs as an employer." *Lane v. Franks*, 573 U.S. 228, 242 (2014) (internal quotation marks omitted) (quoting *Garcetti*, 547 U.S. at 418); *see also Alvarez v. Staple*, 345 F. Supp. 3d 320, 329–30 (S.D.N.Y. 2018).

"[W]hen public employees make statements pursuant to their official duties," they are not "speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421; *see also Jeune v. Crew*, No. 16-CV-1107 (MKB), 2017 WL 4357382, at *7 (E.D.N.Y. Sept. 29, 2017). To determine whether speech falls outside of a public employee's official duties, courts employ a "practical" approach. *Garcetti*, 547 U.S. at 424. As "job descriptions often bear little resemblance to the duties an employee actually is expected to perform," "the listing of a given task . . . is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Id*. at 424–25. Speech is not protected if it "owes its existence" to the plaintiff's role as an employee, *id*. at 421, or it is "part-and-parcel of his concerns about his ability to properly execute his duties." *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 203 (2d Cir. 2010) (internal quotation marks omitted) (citation omitted). The inquiry is "not susceptible to a brightline rule." *Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012). Rather, courts are instructed to consider the "nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two." *Id*. at 306–07 (citation omitted).

Courts "routinely" hold that a teacher's complaints about the conduct of other school district personnel, and complaints about violations of law and district policies are made pursuant to their official duties, and thus do not amount to protected speech. *Agyeman*, 254 F. Supp. 3d at 535–36 (collecting cases). For example, where a plaintiff teacher had "some responsibility" for ensuring the "fair and proper administration" of a test, and where he alerted school officials that his colleague was facilitating cheating on that test, he did so pursuant to his official duties. *Cohn v. N.Y.C. Dep't of Educ.*, 697 F. App'x 98, 99 (2d Cir. 2017) (summary order). Moreover, "[r]eporting a violation of state law to ensure the welfare of students is a duty of a teacher, and

'in furtherance of the execution of one of her core duties." *Harris v. Bd. of Educ.*, 230 F. Supp. 3d 88, 102 (E.D.N.Y. 2017); *see also Anglisano v. N.Y.C. Dep't of Educ.*, No. 14-CV-3677 (SLT) (SMG), 2015 WL 5821786, at *6 (E.D.N.Y. Sept. 30, 2015) (Plaintiff's speech was not protected because she had a duty to report misconduct of her co-teacher, as "it is beyond dispute that a teacher is responsible for protecting" students and "preventing inappropriate activity."); *Kelly v. Huntington Union Free Sch. Dist.*, No. 09-CV-2101 (JFB) (ETB), 2012 WL 1077677, at *13 (Plaintiff's complaint was "pursuant to her duties as a teacher" because it aired her "concern about teacher misconduct involving a violation of school policy.").

Additionally, the absence of a civilian analogue may serve as further evidence that speech is not protected. *See Matthews*, 779 F.3d at 173. Speech has a civilian analogue when it is made through "channels available to citizens generally." *Jackler*, 658 F.3d at 238 (quoting *Weintraub*, 593 F.3d at 204). Courts have found that a civilian analogue exists where a plaintiff appealed to people "with whom he did not have regular interactions and who had an open door to community comments and complaints." *Matthews*, 779 F.3d at 176; *see also Garcetti*, 547 U.S. at 423–24 (noting that a public employee writing a letter to a local newspaper may be protected because "that is the kind of activity engaged in by citizens who do not work for the government"); *Taylor v. N.Y.C. Dep't. of Educ.*, No. 11-CV-7833 (AJN), 2012 WL 3890599, at *4 (S.D.N.Y. Sept. 6, 2012) (Speech "made to politicians, the press, or other external channels" is often made by a citizen rather than a public employee). In contrast, the internality of speech suggests that it does not have a civilian analogue. *See Taylor*, 2012 WL 3890599, at *4 (collecting cases); *see also Eyshinskiy v. Kendall*, 692 F. App'x 667, 679 (2d Cir. 2017) (summary order) (assistant principal's complaints made "directly to his supervisors" did not have a relevant civilian analogue); *Alvarez*, 345 F. Supp. 3d at 333–34 (finding no civilian analogue where the channels

11

plaintiff utilized – a principals' meeting and letter to DOE – "derived from her status as an acting principal"). While the existence of a civilian analogue is not dispositive, *Montero*, 890 F.3d at 394, it "militates in favor of an inference" that the speech is protected. *Cohn*, 697 F. App'x. at 99.

In the context of public schools, courts "have consistently held that when teachers raise concerns up the chain of command, or through channels only available to those working in the school" on subjects related to their jobs, "they do not speak as citizens." *Picinich v. N.Y. Dep't of Educ.*, No. 16-CV-844 (CBA) (LB), 2016 WL 11265651, at *7 (E.D.N.Y. Oct. 14, 2016) (internal quotation marks omitted) (citations omitted) (collecting cases), *report and recommendation adopted*, 2017 WL 1079976 (E.D.N.Y. Mar. 22, 2017); *see also Agyeman*, 254 F. Supp. 3d at 536 ("[T]he fact that plaintiff sent her e-mails to other District employees as internal correspondence and did not publicize her concerns weighs in defendants' favor."); *Anglisano*, 2015 WL 5821786, at *7 ("While plaintiff asserts that she was acting as a 'private citizen,' the fact that she spoke only to her direct supervisor and to the principal belies this conclusory assertion.").

### A. Retaliation for Speech at the Cabinet Meeting

As explained *supra*, when teachers speak out against a colleague's misconduct, on behalf of students and in support of a school's legal duties, as Einsohn alleges he did here, they are acting in the execution of their official duties. Whether Einsohn was speaking exclusively as an AP or as a teacher, the conclusion applies with equal force. Einsohn's conclusory statement that he spoke as a "concerned Citizen," (Am. Compl. at ¶ 17), does not alter the Court's finding that he spoke as an employee for purposes of First Amendment law.

Further, Einsohn does not suggest that he spoke on an issue that was "neither part of his job description nor a practical reality of his everyday work." *Matthews*, 779 F.3d at 174; *cf. Ramirez v. Hempstead Union Free Sch. Dist. Bd. of Educ.*, 33 F. Supp. 3d 158, 173 (E.D.N.Y. 2014) (Director of Technology's retaliation claim survived a motion to dismiss where he reported grade inflation, but alleged that grading was "not part of his job functions."). On the contrary, the reasonable inference is that Kwait asked Einsohn about the pass rates in the NLAS class because this subject matter is in his purview as AP. Moreover, Kwait's suggestion to inflate grades likely interfered with Einsohn's ability to execute his duties as AP. *See McDonald v. Hempstead Union Free Sch. Dist.*, No. 18-CV-5658 (DRH) (SIL), 2019 WL 2716179, at *6 (E.D.N.Y. June 28, 2019) (finding plaintiff spoke as an employee, not a citizen, when he reported corruption because it "affected his ability to do his job"); *see also Kelly*, 2012 WL 1077677, at *13 (granting summary judgment for defendants where teacher "admit[ted] that she complained to the Assistant Superintendent" because her supervisor's misconduct "negatively affected her ability" to teach).

Additionally, the absence of a civilian analogue reinforces the Court's conclusion that Einsohn did not speak as a private citizen. The Cabinet Meeting was internal and, by definition, an exclusive staff meeting. This was by no means a platform "available to citizens generally," much less an agency open to complaints by "any citizen in a democratic society." *Jackler*, 658 F.3d at 238, 241 (internal quotation marks omitted) (citations omitted). Rather, Einsohn's speech was only made possible by his position as a cabinet member. He does not allege that he invoked a public forum to air his concerns, nor does he allege that he escalated his concern beyond the meeting. The pleading does not allow the Court to draw an inference that Einsohn was speaking as a citizen when he challenged his supervisor at an employee staff meeting.

13

"[T]hese types of internal complaints by teachers about student/teacher issues based upon information learned through their jobs—whether it be safety issues, staffing/service issues, violation of school policy, or misuse of school property/information—constitute speech as a public employee, rather than a private citizen, and are not protected by the First Amendment." *Kelly*, 2012 WL 1077677, at *15 (collecting cases). Because Einsohn's speech was not made as a citizen, his First Amendment claim related to speech at the Cabinet Meeting must be dismissed on this basis. As a result, the Court need not address defendants' additional arguments. *See Jackler*, 658 F.3d at 237; *see also Kelly*, 2012 WL 1077677, at *16.

### B. Retaliation for Filing the Instant Action

Einsohn separately argues that he was retaliated against because he filed this lawsuit, and that the complaint in and of itself is protected speech. (Am. Compl. at ¶ 45.) For a lawsuit to constitute protected activity under the First Amendment, it must address a matter of public concern. *See Ruotolo v. City of New York*, 514 F.3d 184, 188–89 (2d Cir. 2008). In other words, it must relate to a "matter of political, social, or other concern to the community." *Giacopelli v. Inc. Vill. of Malverne*, 829 F. Supp. 2d 131, 141 (E.D.N.Y. 2011) (internal quotation marks omitted) (citations omitted). Speech that is "purely private," such as "an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern." *Lewis v. Cowen*, 165 F.3d 154, 164 (2d Cir. 1999); *see also Storman v. Klein*, 395 F. App'x 790, 793–94 (2d Cir. 2010). The analysis turns on "whether the employee's speech was calculated to redress personal grievances or whether it had a broader public purpose." *Ruotolo*, 514 F.3d at 189 (internal quotation marks omitted) (citation omitted); *see also Gusler v. City of Long Beach*, No. 10-CV-2077 (AMD) (AKT), 2016 WL 11493644, at *28 (E.D.N.Y. Aug. 4,

2016) (where a lawsuit sought relief relevant only to plaintiff, it did not address a matter of public concern).

In *Ruotolo*, for example, a New York City Police Department ("NYPD") employee filed a lawsuit alleging that the NYPD retaliated against him for his investigatory report on employee deaths, as well as his filing of the suit itself. The Second Circuit dismissed his claim, finding that the lawsuit did not address a matter of public concern, as the alleged retaliation focused on "the circumstances and prerequisites of his employment, such as reassignment, transfer, time off, and discipline," and the relief sought was "almost entirely personal" to Ruotolo. 514 F.3d at 190. The Circuit also rejected the notion that a request for punitive damages "to deter future illegal and retaliatory conduct" transformed the lawsuit into one that implicated the public, even though the request "arguably hint[ed] at some broader public purpose." *Id*. at 190. "[R]etaliation against the airing of generally personal grievances is not brought within the protection of the First Amendment by the mere fact that one or two of [a public employee's] comments could be construed broadly to implicate matters of public concern." *Id*. (internal quotation marks omitted) (citation omitted).

As in *Ruotolo*, the alleged retaliation here is based exclusively on Einsohn's employment with DOE – poor mid-term evaluations, reassignment of a class, disciplinary conferences, and reduced income opportunities. Further, the relief sought is personal in nature, as Einsohn seeks damages exclusively for his own purposes, and his complaints do not concern a broader public purpose. His vague demand for unspecified injunctive relief does not elevate his claim to a matter of public concern. As Einsohn has failed to meet the threshold requirement of plausibly alleging his lawsuit relates to a matter of public concern, the Court must dismiss his claim.

Additionally, the amended complaint suggests Einsohn's intent to bring a Section 1983 claim alleging violations of the Equal Protection Clause, yet it only mentions it in passing and neither party raises it in their briefs. (Am. Compl. at ¶ 45.) Accordingly, the argument is deemed waived and the claim is dismissed. *See Abraham v. Town of Huntington*, 17-CV-03616 (ADS) (SIL), 2018 WL 2304779, at *14 (E.D.N.Y. May 21, 2018) (declining to rule on an issue because it "was only briefly mentioned and was not fully briefed" and "[n]either party cite[d] a single case on the issue"); *see also Lyn v. Inc. Vill. of Hempstead*, No. 03-CV- 5041 (DRH), 2007 WL 1876502, at *16 & n.13 (E.D.N.Y. June 28, 2007), *aff'd*, 308 F. App'x 461 (2d Cir. 2009).

### III. State Law Claims

Free speech claims under the state constitution and the First Amendment are governed by the same standards. *See Harris*, 230 F. Supp. at 102 (citation omitted); *see also Carter v. Inc. Vill. Of Ocean Beach*, 693 F. Supp. 2d 203, 212 (E.D.N.Y. 2010), *aff'd*, 415 F. Appx. 290 (2d Cir. 2011) (citing cases). Thus, Einsohn's free speech claim under the New York State Constitution is also dismissed.

With respect to Einsohn's other state law claims, he alleges that DOE engaged in negligent supervision and retention of Kwait. As explained *supra*, compliance with a demand for an examination is a precondition for commencement of an action against a municipal defendant, provided that the municipality schedules the § 50-h hearing within ninety days of service of the demand. GML § 50-h(5). The failure of a plaintiff to comply warrants dismissal of the action. *See Fodelmesi v. Schepperly*, No. 87-CV-6762 (KMW), 1993 WL 127211, at *7 (S.D.N.Y. Apr. 20, 1993) (dismissing state law claims against municipal defendants because

plaintiffs commenced the action before complying with an examination demand); *see also Ross v. Cty. of Suffolk*, 84 A.D.3d 775, 775–76 (2d Dep't 2011).

If Einsohn failed to appear for a § 50-h hearing, as defendants contend, he is precluded from bringing an action based on his state law claims. However, the Court is not in a position to make this determination at this time, as the amended complaint does not state whether Einsohn attended a hearing, and the Court is precluded from considering documents defendants rely upon to argue for a procedural bar. The Court notes that Einsohn does not respond to defendants' procedural argument in any meaningful way.

However, even if Einsohn did fulfill the procedural requirements, his state law claims fail on substantive grounds. "To maintain a claim against a municipal employer for the negligent hiring, training and retention of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of her employment" when committing the tort. *Velez v. City of New York*, 730 F.3d 128, 136–37 (2d Cir. 2013) (internal quotation marks omitted) (citation omitted); *see also Jones v. City of New York*, 988 F. Supp. 2d 305, 319 (E.D.N.Y. 2013); *Cerbelli v. City of New York,* 99-CV-6846 (ARR) (RML), 2008 WL 4449634, at *24 (E.D.N.Y. Oct. 1, 2008) (collecting cases). An act falls within the scope of employment "if it is in furtherance of, or reasonably necessary or incidental to, the employer's business or interest." *Hamilton v. City of New York*, No. 15-CV-4574 (CBA) (SJB), 2019 WL 1452013, at *31 (E.D.N.Y. Mar. 19, 2019) (citing *Selmani v. City of New York*, 984 N.Y.S.2d 114, 115–16 (2d Dep't 2014)). Alternatively, an act falls outside the scope of employment if it is "taken for wholly personal reasons, which are not job related." *Id*. (quoting *Selmani*, 984 N.Y.S.2d at 116).

Here, Einsohn does not allege that Kwait acted outside the scope of his employment. The alleged conduct concerns Kwait's role as Einsohn's supervisor and occurred at their place of

employment. Einsohn does not allege that Kwait acted for personal reasons, or any other facts to support an inference that Kwait acted outside the scope of his employment. Thus, Einsohn's claims of negligent retention and supervision are dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss, (Doc. No. 19), is granted in its entirety, and all claims are dismissed. The Clerk of the Court is respectfully directed to enter judgment in favor of defendants, mail a copy of this Order and the judgment to Einsohn, note the mailing on the docket, and close the case.

SO ORDERED.

Dated: Brooklyn, New York
       September 27, 2019

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge